Good morning, Your Honors. Christy Hughes from Federal Defenders on behalf of Mr. Santos-Cordero. This Court and the Supreme Court have stressed that for a Batson challenge, it does not matter that the prosecutor might have had good reasons for the strike. What matters is the real reason the prospective juror was stricken. And yet here, the District Court denied Mr. Santos-Cordero's Batson challenge at the first step based entirely on why it thought the prosecutor had struck Ms. Perez. But why isn't that within the spirit of the totality of the circumstances when the judge, when Judge Burns has conducted the voir dire himself has been present for every second in which people have been exposed to this juror and explains that had the government moved for a for cause recusal that he might well have granted it? Well, I don't think I understand. I understand that sequentially, we might have wished that Judge Burns had done this slightly differently. But in the totality of the circumstances, which is a part of the overall test, why doesn't this meet that test? Well, because, Your Honor, even at a later stage, even if Judge Burns had made this assessment at step three, it still would have been the wrong standard because Judge Burns based this on what he thought the prosecutor's reasons for the strike were. And that's never appropriate. That's not even at step three. He didn't say she was nervous. He said the main reason for the government's challenge is the way that she kind of came across and answered the questions. That's at ER 116. He said, I can well understand why someone who has to prove that this fellow is guilty would say, you know what, I don't want to take the risk that her strong feelings are going to bleed into the assessment here. Again, I understand the formality. I understand the formality of the way in which you would like the district court to have proceeded here. But when the district court feels that the answer is just obvious to everybody present, why doesn't that satisfy the test? Well, because this Court in Curry and the Supreme Court in Johnson, this Court in Paulino and in Shirley, the same exact thing happened. The prosecutor made a strike. The defense raised a challenge. And in each of these cases, the judge said, great, let me go through it. Well, this juror had a fraud conviction. This person was young and said, I don't find a reason. The Supreme Court said in Johnson, that's the wrong standard. You don't supply a reason to the prosecutor. You certainly don't do it at step one, but you don't ever supply a reason for the prosecutor. So here, Judge Byrne should have looked at the totality of the circumstances that raised an inference of discrimination, realized that's a very low standard for Mr. Santos-Cordero to meet. We have argued he should have found an inference of discrimination, and then moved to step two. This Court and the Supreme Court, again, have said that burden at step one is very low because it requires very little of the government at step two. The government has to come forward with only a frivolous or an utterly nonsensical reason to clear their burden at step two. And so everyone keeps saying that Judge Byrne said that the government's reason was that she appeared nervous, but that's not what is in the transcript. The Court immediately upon the objection, the Court says, okay, the Court finds no prima facie case here. And then he gives the two reasons why there is a prima facie case. He says, first, the prospective juror, I acknowledge, has a Hispanic surname, appears to be Hispanic, is a lawful immigrant, and this case is about illegal reentry. But then he says there was great hesitancy, and it isn't nervousness that he's speculating about. It's hesitancy. So we have three reasons, two of which are discriminatory reasons that the judge speculates about. And then he says he doesn't see anything here about it being on an invidious basis, but the thing that I find ironic is he starts with saying the two things that would make it an invidious basis, the Hispanic background of the juror and the fact that she was a lawful immigrant in a case involving immigration. One question I have is the only legitimate speculative basis the Court seems to give is this hesitancy. I'm wondering if there were any other jurors who hesitated when they were asked any questions. The record doesn't reflect that. Defense counsel at a later break before the trial started said that there was one juror who was similarly hesitant, but all of the parties had problems recalling which particular juror that was, and so the record doesn't really reflect this hesitancy. The other problem I have with this case is that all the cases seem to say, okay, procedurally, the district court did not follow what Batson requires. So let's send it back and have him ask the prosecutor what was his legitimate reason for striking the juror. I don't understand that at all. The conviction stands, and the prosecutor by now, after two years of litigating this, I'm sure is going to be able to voice some reason. He'll leave out the discriminatory portion of what Judge Burns said, but he'll come up with something. I don't see that as a remedy at all, but that seems to be what the lie is. I agree, Your Honor. I mean, at this point, the prosecutor could say she was hesitant, knowing that Judge Burns is going to accept that as a reason because he already thinks that's a valid reason, and then we sort of cleared steps one and step two. But that still means that we then get to step three, where the district court will then assess all of the circumstances together. Your Honor is correct. This was an illegal reentry case. This Court said in Esparza-Gonzalez that that means race was clearly at issue in the proceedings. This was a non-diverse jury pool to begin with. The government struck a Hispanic juror. Mr. Santos-Cordero was Hispanic. In Collins, this Court noted that when the jury pool is already non-diverse, and the government strikes even a single juror, that that deserves closer scrutiny. And the reason is, someone in the position of Mr. Collins, where there was only one strike of an African-American juror, or Mr. Santos-Cordero, really can never clear that burden at step one if we don't give these challenges closer scrutiny when there's not a diverse pool. There seemed to be quite a bit of controversy and a lot of discussion between the district court and counsel over what the composition of the pool was and whether we ended up with a Hispanic juror. So what's your assessment? Aside from this juror, from Ms. Perez, what other facts can you cite? Mr. Nofuente, the parties disputed his race, but everyone agreed that he was non-white. So again... He's the one that we thought might have been Filipino? Correct. And this Court said in Collins that striking a member of more than one protected group can also raise an inference of discrimination. Was there an explanation? Was there a Batson objection to Mr. Nofuente? The fact that he was non-white was raised later. There wasn't a formal Batson challenge made to Mr. Nofuente. So it was raised in the context of the challenge to Ms. Perez. Somebody said, well, we also struck Mr. Nofuente, but nobody asked the prosecutor why. Correct. Nobody challenged it at the time. Correct. So evidently, Mr. Cordero's counsel didn't think that one was worth objecting to at the time. I mean, I don't know her reasons for not raising it, but she didn't object under Batson at the time. All right. What about Ruiz? So Ms. Ruiz was struck, but defense counsel noted she had a Hispanic surname, but it appeared to be a married name. She appeared white, and she had said during the voir dire that she was married. And no one really challenged that. But we don't really know, and as we know from immigration problems, we often have imputed race or imputed characteristics. So the fact that her last name was Ruiz might have suggested that she was Hispanic or that she would have been sympathetic to Hispanics being married to one if she was not herself. Perhaps, but we do have defense counsel saying that appears to be a married name, and there wasn't a speech from the government about that. Okay. And what about Juarez? Juarez was sat on the jury. Okay. So we did have a Hispanic on the jury. Yes. And then what about Fructuoso Perel? No one really, there's a dispute about Mr. Perel's race. No one really had an answer. Everyone said he was nonwhite, but no one really went into his race. And was he struck? Was he impaneled? Was he? He was struck. Struck by the government? It's not clear from the record. So Ms. Hughes, is the only evidence that the defense relies on to make its prima facie case the fact that Ms. Perez was Hispanic and that it was a case of a racial nature, that race was at issue because it was immigration? Well, again, we're not challenging the ultimate determination of whether there was an inference of discrimination, whether we raised the prima facie case. We're challenging the procedure the district court went through in making that determination. But to answer your Honor's question, no, it's that Ms. Perez was Hispanic, as was Mr. Santos Cordero. This was an illegal reentry case. This was a peremptory challenge which the Supreme Court has said we can rely on because that's the type of tool that someone who wants to discriminate can easily use. This was a non-diverse jury pool to begin with. The prosecutor also struck Mr. Nofuente, who was a member of another protected class. And so all of those circumstances together give rise to an inference of discrimination. Because again, it's just a very low burden for us to meet to progress to step two. If Judge Burns didn't follow the correct procedure, but the defense didn't make a prima facie case regarding the discrimination, is there still a reversal? I'm sorry, I don't . . . If Judge Burns didn't follow the correct procedure, but . . . Did or did not? Did or did not follow the correct procedure. And it doesn't appear to be a lot of dispute that he didn't allow the government to give its justification. But the panel concludes that there was not a prima facie case. Does that resolve the matter? Does that end the challenge? No, Your Honor. It should still be remanded for Judge Burns to go through the proper procedure and then determine whether there's a prima facie case. That determination should be made by the district court in the first instance after following the proper procedure. But you think that what you'd like the court to do is to reverse, send us back for the process that Judge Wardlaw described? For an evidentiary hearing, yes, where we go back and we start over at step one, step two, and step three. I would request remand to a different judge. I know that we didn't raise that in our briefs, but I think given these facts and given that the prosecutor already knows the reasons that Judge Burns is going to accept, remand to a different judge may be appropriate. How could a different judge judge this, having not seen the juror? Well, I think it can be judged on the transcript. That's the way it works in habeas. Well, if it can be judged on the transcript, then we can do that, right? Your Honor, it could. We would just have to have the AUSA come in and offer an explanation. Correct. I mean, this happens in habeas cases all the time, sometimes ten years later, where all we're dealing with is a transcript. Nervousness can be discerned from... And wouldn't a new district judge have an obligation to be deferential to Judge Burns' assessment of the demeanor? I think so, Your Honor, yes. But that, again, would come up, I think, at Step 3. Because this Court said in Finn that those race-neutral reasons don't come in at Step 1. They come in at Step 3. Otherwise, there's really no meaning behind the low burden at Step 1 if we just collapse the two steps into each other and the defendant has to raise an actual case of discrimination based on all the circumstances at Step 1. I still really am troubled by the practicality of the situation. It seems quite futile that, you know, a challenge to this procedural thing to just redo it, whether it's Judge Burns or any other judge, it's not likely to result in that juror being stricken or a new trial. I mean, if the juror were stricken, would there then be a new trial and you'd have to impanel a new jury? If Judge Burns finds that that was a discriminatory strike after the three steps? Well, he said there's no prima facie case. So if the next judge says, no, there is a prima facie case. Or if we say, there's a prima facie case. And now we have to go hear the government's reason. Well, I mean, what this Court has done previously in Collins and as far as in Gonzalez is go back for Steps 2 and 3. I understand your Court's frustration, the Court's frustration, and I share it. It does seem futile. That's the process this Court has employed. I do think, though, in other cases, for instance, in Johnson, the trial court gave a reason and when it came time for the prosecutor later, the prosecutor said, oh, no, that wasn't my reason. My actual reason was X, Y, and Z. And so, I mean, it may be that the prosecutor can't proffer a race-neutral reason for the strike. I don't know because she was never given, well, she was given the opportunity, she never took the opportunity to give a race-neutral reason for the strike. Which is also something that I think, that's not really a proper consideration at Step 1 because normally it comes in at Step 3, but in our prima facie case, because that did occur here, the fact that the prosecutor couldn't proffer a frivolous or an utterly nonsensical reason, I mean, she could have said she was hesitant, Your Honor, and that, I think, would have probably cleared her burden. The fact that she didn't do that is also something this Court should consider in whether we raise that prima facie case. I know I went way over my time. Thank you, Counselor. You're over your time. Yes. Good morning. May it please the Court. Nicole Reese Fox for the United States. I think that there is absolutely nothing wrong with the procedure that was used in this case. The District Court followed the proper Batson analysis and in that framework, looked at Step 1 at the totality of the circumstances and the judge's observations about this juror and the hesitancy, the emotion in her voice, the distress in her answers, are all part of, as Judge Bybee acknowledged, part of the totality of the circumstances. And in fact, that's exactly the type of observations that when you have a case such as this one where you have the strike of a single juror and you have to compare that juror in a comparative juror analysis to other jurors, the type of considerations that naturally have to be made in that analysis. And even if the Court finds that there is something sort of improper in anything that Judge Burns said in the very robust analysis that he provided, as Judge Wardlaw recognized, the remedy here is not to remand to do Step 1 all over again. It's for, as the Court did in Collins, for this Court to look de novo at the record and decide whether Mr. Santos Cordero has made a prima facie case. And the facts that, the circumstances that were addressed below, and again in the opening and reply reads, are simply insufficient to meet that burden. The four sort of circumstances that Mr. Santos Cordero has pointed to in his brief here in this Court are that Ms. Perez was Hispanic and the defendant is Hispanic. And this Court has said, indeed, in Hernandez-Herrera, this Court has a similar situation. We had a 1326 illegal reentry case. We had the strike of a single juror who was Hispanic and a defendant who was Hispanic. And those circumstances, standing alone, were insufficient to make the prima facie case. And the other circumstances, the fact that the jury pool wasn't diverse, the fact that the prosecutor didn't, you know, take it upon herself to move to Step 2 when the District Court had already sort of finished at Step 1, are insufficient to sort of meet that burden at Step 1. So, do you have, is there any basis in this record to decide what the government would have said was its legitimate reason for striking this juror? No, and there need not be. This Court has said that if the District Court determines at Step 1 that the defendant hasn't met his or her burden, that the analysis ends there. So our examination has to be to look at the record and determine if there was a prima facie case, and if we were to conclude there was a prima facie case, we would then have to send it back so that the government could articulate a non-discriminatory reason. Precisely, and all of the cases heretofore that this Court has sort of considered these types of challenges, procedural challenges at Step 1, that's exactly what the Court has done. In the case of United States v. Collins, which was a case on direct appeal, unlike many of the other cases, which were habeas cases, even United States v. Collins, the Court reviewed de novo the Step 1 analysis, determined that a prima facie case had been made and remanded so that the District Court could move on to Steps 2 and 3. I think where the direction of the cases is going, however, is there have been more judges apparently in more cases, where the judge is just speculating. It conflates Step 1 and Step 2, because in the analysis of the prima facie case, he's bringing in what the government would give as its, you know, legitimatory reason. And that's, I think, what the Supreme Court has said shouldn't be done, that you need to follow this procedure. Certainly. And I agree. For example, in Johnson v. Fins, that's sort of what happened, is that there was a statistical disparity. You had three out of three black potential jurors who were struck. And rather than say, okay, well, at this point, the burden has been met, so let's move on to Step 2 and talk about reasons why the prosecutor did strike those jurors, the Court went into its own analysis, juror by juror, deciding sort of what hypothetical reasons. And the Court said in Johnson v. Fins that once there's sort of that statistical disparity, which we do not have in this case, at that point, the existence of legitimate hypothetical race-neutral reasons can't negate the existence of the prima facie case once it's made. But we simply don't have that here. We don't have a statistical disparity. We don't have a pattern of strikes against Hispanic jurors. And indeed, that's exactly what Judge Burns noted in his very first initial analysis before he gave defense counsel, I believe it was three opportunities to try and make the case. He said, the government has not challenged people with Hispanic surnames, certainly people that appear to be Hispanic, which... But isn't there... So what... I think one of the problems here is that the defendant was a Mexican national who was charged with illegal reentry, and the juror was a Mexican national who had come to our country and gone through the lawful proceedings to become an immigrant. So I think it's more than just Hispanic surname. I think it's actually Mexican national coming to the U.S., and I think that brings it closer because in the sense that they're so similarly situated that there could be more... That is a stronger case than just Hispanic surname. And also, she was the very first one to speak. Anyway, I just think it brings it closer, makes it a closer question to me. I understand, and I agree that those are relevant to the totality of the circumstances analysis, but by that logic, any time you have a 1326 case, which we have many of them in the Southern District, you have an immigrant with a Hispanic background from Mexico on the jury, and there's a state... I guess it's rarely a Mexican national, often, more often these days, probably from Central America, right? I think we have a variety, but I think we still have... So I guess what I'm trying to get to is, is being an immigrant and a class for invidious discrimination, would it be legitimate to strike the peremptory challenge someone who was an immigrant, even if they weren't Hispanic? I think... I'm not sure that the Supreme Court has addressed that question, but I do think that what Defense Counsel focused on was her Hispanic background. She said, the only reason that could have possibly be given for striking Ms. Perez is her immigration history, her Hispanic background. And certainly, had there been other immigrants on the jury panel, that would be a way to do a comparative juror analysis. I think if the prosecutor had said, because this is a case dealing with illegal immigration, if it had been, for example, a Chinese immigrant on the jury, I'm not sure that that would even trigger sort of a Batson problem to say, because this person has experience with the immigration system, that may... And especially where you have a juror who's expressing feelings about the immigration system, or feelings about immigration in general, that that certainly wouldn't give rise to an inference of discrimination. Of course, that would be a question at step two, and because all of the discussion at step one was focused on her Hispanic background and not her immigrant status, that issue never came up. And I don't understand the briefs on appeal to be sort of focusing on her immigrant status. If the court has further questions, we would ask that the district courts willingly be affirmed. All right. Thank you, counsel.  United States v. Santos Carrero will be submitted.
judges: Wardlaw, Bybee, Zipps